UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

----------------------------------------------------------------------X

U-HAUL INTERNATIONAL, INC.
2721 N. Central Avenue
Phoenix, AZ 85004, and                                    18-cv-57

U-HAUL CO. OF PENNSYLVANIA,
1515 Market Street                                        **COMPLAINT**
Philadelphia, PA 19102

                                 Plaintiffs,              **ECF CASE**

                - *against* -

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001, and

U.S. DEPARTMENT OF TRANSPORTATION
1200 New Jersey Avenue, SE
Washington, DC 20590

                                 Defendants.
----------------------------------------------------------------------X

Plaintiffs U-Haul International, Inc. ("UHI"), by their attorneys, Consovoy McCarthy

Park PLLC, and U-Haul Co. of Pennsylvania ("UHPA"), by their attorneys, Bryan Cave LLP

(together, "Plaintiffs"), for their complaint against Defendants U.S. Department of Justice and

U.S. Department of Transportation, hereby allege as follows:

## I.  INTRODUCTION

1.      This case is about the federal government's refusal to provide access to certain

evidence and information that is essential to Plaintiffs' ability to defend themselves in a civil

lawsuit in state court involving the explosion of a food truck, which killed two people and

injured eleven others.

2.      Plaintiffs seek declaratory and injunctive relief that will allow them to obtain

access to evidence and information critical to the trial of claims currently pending against them

in the Philadelphia Court of Common Pleas. *See Galdamez v. U-Haul Co. of Pa., et al.*, No. 1947 (Phila. C.C.P., June Term 2015) (the "State Litigation"). These claims arise from the explosion of a food truck on July 1, 2014 (the "Incident") that also is the subject of a federal investigation by the U.S. Department of Justice, through the U.S. Attorney's Office for the Eastern District of Pennsylvania ("USAO") (together, "DOJ"), and the U.S. Department of Transportation ("DOT") (collectively, "Defendants" or the "government"). Although three and a half years have passed since the Incident, DOJ has brought no criminal charges.

3.      Plaintiffs seek the following from Defendants: (1) access to physical evidence, including (a) propane cylinders that were on the food truck at the time of the Incident and "Progressive" cylinders located nearby; (b) information related to any inspection or testing of the food truck; and (c) security videos of the operation of the food truck and the Incident; (2) deposition testimony from federal agents who investigated the Incident; and (3) information relating to Defendants' investigation of the Incident.

4.      Plaintiffs need this evidence and information to understand precisely what caused the Incident; without it, they are unable to defend themselves fully against the claims at issue in the State Litigation, and the court's ability to adjudicate the State Litigation will be impaired. For example, Plaintiffs need access to the physical evidence to conduct testing and analysis in accordance with Section 921 of the National Fire Protection Association ("NFPA") code, which is the industry standard for investigating the causes and origin of fires. Such testing is necessary to enable the parties to present a reliable theory of causation.

5.      Under the Federal Housekeeping Statute, 5 U.S.C. § 301, and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), federal agencies have issued internal regulations governing the release of evidence in their possession. Although the housekeeping statute

authorizes federal agencies to centralize their approval process for release of information held by the agency or testimony by agency employees, *Touhy* regulations are not a bar to discovery.

6.      *Touhy* regulations do not grant the government a privilege from the judicial discovery process. Further, the housekeeping statute "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. Rather, courts should weigh an agency's policies of nondisclosure against the legitimate demands of proper judicial administration and the needs of private litigants that favor disclosure of relevant information.

7.      For over a year and a half, Plaintiffs have made repeated requests to Defendants pursuant to the relevant *Touhy* regulations, explaining the information they need, why they need it, why there are no suitable alternatives, and proposing scientifically acceptable protocols to inspect and test items of physical evidence. In particular, Plaintiffs have explained their "urgent need" for the evidence and information in Defendants' possession to ensure a fair trial in the State Litigation, which is scheduled to begin in late June 2018, with expert disclosures due in the first weeks of February and April 2018.

8.      Specifically, one of the main factual issues is what caused the subject cylinder to explode. Physical evidence and other information gathered in the government's investigation bears directly on this issue. Indeed, Defendants are the only source of this information and have sole possession of evidence, including the exploded propane cylinder, the companion cylinder, the propane regulator, propane supply hoses, and perhaps otherwise unavailable security video footage. Further, the government holds propane cylinders that third parties collected and altered in the immediate aftermath of the Incident.

9.     Nonetheless, on November 27, 2017, Defendant DOT issued final agency decisions informing Plaintiffs that it was refusing the requests for depositions and access to physical evidence.

10.     On December 8, 2017, following an in-person meeting, Plaintiffs sent another letter to Defendants requesting answers to specific questions about their investigation of the Incident. After over a month, Defendants still have provided no substantive response to these requests, despite Plaintiffs' emphasis on the urgency of their requests. Only after Plaintiffs advised DOJ that they would deem the non-response as a final agency denial did DOJ respond to state that it was referring the questions to DOT and that they had not yet issued a final agency decision as to the December 8, 2017 requests. Defendants do not dispute, however, that they have issued final agency decisions as to Plaintiffs' requests for access to the physical evidence and for depositions.

11.     In short, Plaintiffs have repeatedly asked Defendants over many months to produce information and materials that are essential to Plaintiffs' ability to defend themselves in the State Litigation—through numerous letters and repeated requests for meetings in an effort to discuss the reasons for Defendants' refusals and to negotiate potential resolutions. Defendants, however, have continued to stonewall and to provide no assistance to Plaintiffs. Indeed, one Assistant U.S. Attorney made clear in a meeting that Plaintiffs' State Litigation was unrelated to the government's investigation and was not her concern.

12.     These refusals by Defendants have made it impossible for Plaintiffs to fully defend themselves in a case about the very matters that the government has been investigating for years. Indeed, DOJ has brought no criminal charges after over three and a half years of investigating the Incident.

13.     In a case of this magnitude—arising from a human tragedy, impacting numerous parties, and seeking potentially enormous damages, including punitive damages—it is difficult to understand Defendants' blanket refusal to provide access to key evidence in its sole possession.

14.     Because Defendants have taken final agency action to impair Plaintiffs' rights without providing reasonable, specific, or credible explanations for doing so, their actions are arbitrary and capricious, an abuse of discretion, not in accordance with the law, and should be set aside under the Administrative Procedure Act, 5 U.S.C. §§ 500 *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

15.     Plaintiffs respectfully request that this Court enter an order compelling Defendants to: (1) provide Plaintiffs access to physical evidence to conduct testing and analysis; (2) provide any video or other evidence collected during their investigation; (3) authorize the deposition testimony of agents or former agents of the federal government; and (4) provide answers to Plaintiffs' questions about evidence and information in Defendants' possession.

## II.  JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter and the parties to this suit pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 702, and 28 U.S.C. § 2201. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the Administrative Procedure Act, 5 U.S.C. § 702. This Court has the authority to compel agency action that has been unlawfully or unreasonably withheld or delayed, and to hold unlawful and set aside agency actions.

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 139l(e)(l) because this is an action against an agency of the United States, at least one Defendant resides in this District, and some of the events or omissions giving rise to the claim occurred in this District.

18.     Defendants' denials of Plaintiffs' demands for evidence, information, and testimony constitutes final agency action for which there is no other adequate remedy under 5 U.S.C. § 704.

### III.  THE PARTIES

19.     Plaintiff U-Haul International, Inc. ("UHI") is a corporation organized under the laws of the State of Nevada with its principal place of business in Arizona.

20.     Plaintiff U-Haul Co. of Pennsylvania ("UHPA") is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

21.     Defendant U.S. Department of Justice is an executive department of the United States government (5 U.S.C. § 101) and is an "agency" within the meaning of 5 U.S.C. § 701.

22.     Defendant U.S. Department of Transportation is an executive department of the United States government (5 U.S.C. § 101) and is an "agency" within the meaning of 5 U.S.C. § 701.

### IV.  BACKGROUND

**State Litigation**

23.     On July 1, 2014, a food truck explosion in Philadelphia killed two people and injured 11 others. Representatives of the individuals injured or killed in the Incident filed suit in the Philadelphia Court of Common Pleas against Plaintiffs and others—including the food truck assembly company and the AmeriGas companies that distribute propane and train UHPA employees on propane cylinder refilling—bringing various causes of action, including wrongful death, negligence, and intentional infliction of emotional distress, and seeking

punitive damages. The lawsuit alleges that UHPA refilled the outdated propane cylinders that exploded and failed to inspect them to ensure that they were safe for use.

24.     Expert disclosures in the State Litigation are due in early February and April 2018, and the trial is scheduled to begin in late June 2018.

25.     Beginning in April 2016, Plaintiffs submitted multiple requests to various DOJ agencies, including the U.S. Attorney's Office for the Eastern District of Pennsylvania ("USAO") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); the DOT, including the Pipeline and Hazardous Materials Safety Administration ("PHMSA"); and the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services ("ICE").

26.     Since July 2017, Plaintiffs' requests have been consolidated before DOJ and DOT, and are focused on certain categories of physical evidence, deposition testimony, and other information in the sole possession of the federal agencies that investigated the Incident.

**Defendants' *Touhy* Regulations**

27.     DOT's *Touhy* regulations, 9 C.F.R. § 9.1 *et seq.*, set forth required procedures for private litigants such as Plaintiffs who request DOT employees "to provide testimony or produce records concerning information acquired in the course of performing official duties or because of the employee's official status." 9 C.F.R. § 9.1(a).

28.     The purposes of DOT's regulations are to: "(1) [c]onserve the time of employees for conducting official business; (2) [m]inimize the possibility of involving the Department in controversial issues not related to its mission; (3) [m]aintain the impartiality of the Department among private litigants; (4) [a]void spending the time and money of the United States for private purposes; and (5) [t]o protect confidential, sensitive information and the deliberative processes of the Department." 9 C.F.R. § 9.1(b). DOT's disclosure decisions must be justified by these factors. Agency counsel have discretion to permit exceptions from these regulatory

requirements when it would not interfere with matters of operational necessity and when counsel determines "(1) [i]t is necessary to prevent a miscarriage of justice; (2) [t]he Department has an interest in the decision that may be rendered in the legal proceeding; or (3) [t]he exception is in the best interest of the Department or the United States." 9 C.F.R. § 9.1(c).

29.    Under these regulations, DOT employees may provide testimony, produce information from DOT files, and disclose information acquired as part of their official duties only if authorized by agency counsel under these regulations or by another applicable law. 9 C.F.R. § 9.5. Private litigants seeking such information should submit their request to agency counsel pursuant to the requirements of Sections 9.13 and 9.15 of Title 9 of the Code of Federal Regulations. In particular, Section 9.13 requires private litigants to request records from agency counsel with an explanation of the relevance of those records.

30.    Similarly, DOJ's *Touhy* regulations, 28 C.F.R. § 16.21 *et seq.*, govern the disclosure of material from DOJ files and information acquired by any DOJ employee because of his or her official status or as part of the performance of official duties. 28 C.F.R. § 16.21(a). Prior to producing any such material, DOJ employees must receive approval by the proper DOJ official pursuant to Sections 16.24 and 16.25 of the *Touhy* regulations. *See* 28 C.F.R. § 16.22(a). Private parties should submit to the "responsible U.S Attorney" a summary of the oral testimony or other information sought and detail the relevance of that information to the legal proceeding for which it is sought. 28 C.F.R. § 16.22(c)-(d).

31.    In deciding whether to grant disclosure of the requested information, DOJ officials should consider whether disclosure is appropriate under relevant procedural rules and substantive laws governing privilege. 28 C.F.R. § 16.26(a). DOJ officials should not approve disclosures that would violate a statute or regulation, or that would reveal classified information or confidential sources without prior approval, or that would "reveal investigatory

records compiled for law enforcement proceedings," where such disclosure would interfere with or impair law enforcement proceedings. *See* 28 C.F.R. § 16.26(b)(1)-(6).

32. As detailed below, Plaintiffs have satisfied these regulations. Meanwhile, Defendants have failed to comply with their requirements under their respective *Touhy* regulations and have improperly refused Plaintiffs' requests for information and evidence.

**Requests for Access to Physical Evidence**

33. On June 23, 2017, Plaintiffs submitted letters to DOJ and DOT requesting access to physical evidence. On July 19, 2017, Plaintiffs submitted a detailed proposed testing methodology. Defendants responded in a letter on July 27, 2017 stating that DOT might be able to permit certain cylinder testing on-site in a local DOT office subject to certain conditions. But Plaintiffs explained on August 23, 2017, why those conditions would preclude the industry prescribed testing essential to the State Litigation. After this series of letters clarifying Plaintiffs' requests, on November 27, 2017, DOT issued a "final agency decision" denying Plaintiffs requests.

34. DOT acknowledged that it has possession of propane cylinders and other relevant evidence to which Plaintiffs seek access. DOT noted its earlier authorization in September 2015 for the parties to inspect the propane cylinder. Nonetheless, as DOT acknowledges, it did not permit any non-DOT individual actually to handle the evidence in 2015; access was limited to viewing and photographing the cylinder. As detailed more specifically below, this limited visible access was insufficient. Testing in compliance with industry standard protocol requires further testing and handling of the food truck cylinders.

35. DOT's November 27, 2017 letters denying Plaintiffs' requests state that its denial rested on concerns about interference with enforcement proceedings, 49 C.F.R. § 7.23(c)(7)(i);

conservation of DOT resources, 49 C.F.R. § 9.1(b)(1); and evaluation of the best interests of the government, 49 C.F.R. § 9.1(c)(3).

36.    DOT's purported reasons for refusing Plaintiffs' request to access the physical evidence are unsound. One key reason DOT offered is that it previously allowed Plaintiffs to view the propane cylinders in 2015. This prior access was so limited that it did not allow Plaintiffs the direct physical access to certain cylinders needed to conduct essential fire safety protocol testing.

37.    Specifically, Plaintiffs need direct access to the physical evidence to conduct testing and analysis in accordance with the industry standard NFPA 921, which sets forth the scientific method for investigating the causes and origin of fires. As explained to Defendants, because the fire marshal for the Incident in this case has indicated no NFPA 921 protocol testing was done on the relevant evidence, it is essential for Plaintiffs to have access to physical evidence from the Incident to conduct their own testing using this protocol.

38.    In particular, Lt. Steven P. McMichael, the City of Philadelphia fire marshal who was the lead investigator on the Incident, testified in a deposition on September 17, 2017 that "This fire scene examination was conducted using a scientific methodology, the basic method of fire investigation and a systematic approach as discussed in the 2014 edition of NFPA 921; 'A Guide for Fire and Explosion Investigation,' & the 2014 edition of NFPA 1033 'Professional Qualifications for Fire Investigator.'" McMichael Deposition Transcript ("Tr.") 72:5-12.

39.    Although the fire scene examination was conducted pursuant to NFPA 921, Lt. McMichael was not aware of any inspection or testing that was conducted on the physical evidence from the Incident pursuant to an NFPA 921 protocol. Tr. 72:23-73:3, 101:23-102:10. He expected, however, that the government or the insurance companies would conduct such

testing. Tr. 102:6-10, 119:12-17. Lt. McMichael acknowledged that examination of the scientific evidence pursuant to NFPA 921 can "absolutely" lead to different results than what one would conclude at first blush. Tr. 73:18-22.

40. Thus, Plaintiffs have requested access to the physical evidence for the purpose of conducting testing pursuant to NFPA 921, which is necessary to ascertain the origin of the fire and explosion—the central issue in the State Litigation. Defendants have refused Plaintiffs' request in part based on their assertion that they previously allowed Plaintiffs to access the physical evidence. This explanation does not address, however, the key fact that the prior inspection did not permit Plaintiffs to test the evidence pursuant to NFPA 921. Without allowing Plaintiffs to conduct such testing, Defendants have fundamentally impaired Plaintiffs' ability to defend themselves in the State Litigation.

41. Moreover, DOT's contention that Plaintiffs' request may disrupt further investigations is based on DOT's purported concern that Plaintiffs might destroy evidence or disrupt the chain of custody by physically testing cylinders in a location other than DOT offices. But this is disingenuous: These are issues that are routinely resolved in fire and explosion investigations, and the parties could easily negotiate arrangements to address them.

42. As Plaintiffs have detailed with the assistance of experts, the examination would be conducted by professionals who routinely perform such testing in properly equipped laboratories under carefully controlled conditions; the parties would consult and agree upon the steps to be taken; and entire process would be carefully documented by photography and videography.

43. Defendants' refusal to allow such an examination, which is the industry standard protocol for investigating the origin of explosion and fire, and which is at the center of the State Litigation, is arbitrary and capricious and an abuse of agency discretion.

**Requests for Depositions**

44. On September 1, 2017, Plaintiffs sent to DOT a written request for videotaped deposition testimony from Special Agents Brian Gallagher, Joseph Harris, and Mike Purcell. On September 19, 2017, DOT refused Plaintiffs' request, stating that it provided an inadequate summary of the requested testimony and its relevance. DOT, however, invited Plaintiffs to provide more specific details in follow-up correspondence.

45. On October 10, 2017, Plaintiffs submitted a more detailed explanation for the deposition requests. In particular, Plaintiffs specified that the three special agents had participated in the investigation of the Incident, handled key evidence like the propane cylinders, and collected photographs and other materials directly relevant to the Incident.

46. Defendants do not dispute that Plaintiffs' October 10, 2017 letter was sufficiently detailed. Nonetheless, on November 27, 2017, DOT provided a "final agency decision" denying the three deposition requests. DOT's conclusory letter asserted without explanation that producing the agents for deposition testimony would take up too much time and may interfere with the ongoing criminal investigation related to the Incident. DOT also contends that producing the agents for a deposition may risk the inadvertent disclosure of protected grand jury-related information.

47. But Plaintiffs' request for depositions from these three agents was very detailed and specific in its scope. For example, Plaintiffs explained they are seeking information about what evidence the agents collected, who maintained the chain of custody of the evidence, details about an early August 2014 inspection of the food truck, information about whether videos or photographs were taken of inspections inside the food truck, and operation of the food truck on the date of and prior to the Incident.

48.     It is clear from the scope and specificity of these requests that the three agents on the scene conducting the inspections are the only people who would have first-hand answers to questions such as which evidence the three agents collected. In similar situations, courts have granted access to the government official with hands-on responsibility for production of the information sought by a private party. *See, e.g.*, *United States v. Fleet Management*, 2008 WL 1848102, at *3-4 (E.D. Pa. Apr. 24, 2008) (requiring the testimony of the government official who had drafted a policy at issue in litigation because as the author he was "uniquely qualified to testify regarding [its] contents," despite the government's claim that production of the official would be too burdensome).

49.     Furthermore, DOT's blanket contention of an investigative privilege provides an inadequate explanation for why DOT is unable to make its agents available for the specific, targeted deposition questions posed by Plaintiffs. DOT's refusal is unreasonable because the government's overbroad and unparticularized concerns are far outweighed by the importance of the information to Plaintiffs' ability to defend themselves in the State Litigation.

50.     In addition to the depositions of Agents Gallagher, Harris, and Purcell, on September 1, 2017, Plaintiffs also requested the depositions of nine employees of PHMSA. On October 10, 2017, Defendant DOT denied this request, contending that Plaintiffs had insufficiently explained the relevance of the employees' testimony.

51.     Plaintiffs' request for these depositions in fact explained that Plaintiffs need to interview the PHMSA employees about allegations that the food truck's propane cylinders had been improperly filled, leading to the explosion. Specifically, Plaintiffs seek the testimony of these individuals relating to the PHMSA's Inspection/Investigation Report No. 14303014 regarding the Incident.

52.     Each of these PHMSA employees also was involved in "Operation Food Truck,"
a location investigation prompted by the Incident into whether other food trucks in the area
were operating with out-of-date and otherwise legally noncompliant propane cylinders. Each
therefore has unique information concerning the results of that operation, including the failure
of other propane vendors to properly fill propane tanks that provided propane to food trucks
like the one involved in the Incident. For example, Mitchell Brown, Chief Investigator,
prepared the "Operation Plan" for "Operation Food Truck," denoted as OPLAN Number:
PHMSA FY14-001 ("the Plan"). The other PHMSA employees were Plan "points of contact"
and presumably involved with inspections related to the Plan. Andrew Cooke and Marc
Nichols conducted a compliance inspection at South Philly Propane Co., Inc.—a propane
supplier that was cited for filling out-of-date propane cylinders, including one (like the subject
propane cylinder) that was manufactured in 1948 and was out of compliance with testing
requirements—and documented violations of 49 C.F.R. §§ 171.1(b)(3), 173.24(d), and
173.301(a)(6). PHMSA investigator Katelin Maits also emailed the Philadelphia Department of
Public Health on August 12, 2014 requesting approval to inspect food trucks at a nearby
festival.

53.     Access to information from these PHMSA employees about the filling of the
propane cylinders and alternative sources of propane goes to the cause of the explosion, and it
is thus critical to Plaintiffs' ability to respond to allegations in the State Litigation. DOT has
not given an adequate reasoned explanation for refusing to allow the depositions of the relevant
PHMSA employees.

54.     Also on September 1, 2017, Plaintiffs submitted a letter to DOJ requesting to
depose Detective Timothy Brooks of the ATF. On September 18, 2017, DOJ indicated that this
initial request was insufficiently detailed because Plaintiffs stated only generally that they

sought "to question Mr. Brooks regarding his role in [the Investigation] and knowledge of the Incident." On October 10, 2017, Plaintiffs sent another letter to DOJ explaining further that they sought Detective Brooks' testimony "to provide information regarding the Chain of Custody and handling of the food truck … and all of its contents." Plaintiffs detailed the specific information they seek from Detective Brooks in his capacity as the custodian of the material for the City of Philadelphia, which still holds or held physical evidence from the Incident. Nonetheless, on October 30, 2017, DOJ provided a final agency decision denying this request. It stated only generically that the testimony would create "an unnecessary risk of the disclosure of information compiled for law enforcement purposes the disclosure of which would interfere with law enforcement proceedings."

55.     DOJ's refusal to allow Plaintiffs to depose Detective Brooks, the custodian of key evidence in the State Litigation, is arbitrary and capricious and an abuse of agency discretion.

56.     Finally, in addition to the requests for physical evidence and depositions, on July 25, 2017, Plaintiffs also requested "any and all information related to the Incident." This request supplemented Plaintiffs' earlier request for information on April 12, 2016. On September 11, 2017, DOJ responded, asking Plaintiffs for a copy of the April 2016 letter and indicating that it would work with DOT to develop the best response to this request, which Plaintiffs provided, but Defendants failed to provide any additional information.

**Defendants' Refusal To Provide Other Essential Information**

57.     Until December 2017, Defendants declined Plaintiffs' invitations to discuss their *Touhy* requests in person or by phone. In a November 9, 2017 letter to DOJ, Plaintiffs reiterated a request for an in-person meeting with Assistant U.S. Attorney Elizabeth Abrams to discuss Plaintiffs' specific information requests and their urgency and importance to the State Litigation.

58.     On December 6, 2017, representatives from Plaintiffs and the government met to discuss the requests. In particular, Plaintiffs explained their urgent need for need for key evidence to ensure their ability to defend themselves—and thus to ensure a fair trial in accordance with due process—in the State Litigation, including information from third parties familiar with the case, such as the federal agents who investigated the Incident.

59.     At that meeting, Defendants not only continued to refuse Plaintiffs' requests, but stated repeatedly that they were not concerned about the State Litigation, which they view as unrelated to the government's investigation. This type of callous indifference to the well-articulated needs of civil litigants is indefensible.

60.     In addition, continuing its pattern of asking Plaintiffs for more detail while offering no proposal or assistance in reaching a resolution, DOJ invited Plaintiffs to submit a follow-up letter detailing the information sought. As Defendants know, it is difficult for Plaintiffs to specify every piece of evidence they need because the government has not even provided enough information for Plaintiffs to know what exactly is in Defendants' possession.

61.     Nonetheless, on December 8, 2017, Plaintiffs sent a letter to DOJ requesting granular information in an effort to obtain some guidance from Defendants. In particular, Plaintiffs' December 8 letter asked specific questions about four areas most relevant to Plaintiffs: the Propane Cylinders, the Progressive Cylinders, security videos, and the security of the food truck prior to its release to private parties for inspections in October 2017.

62.     First, regarding the Propane Cylinders, the December 8 letter explained that to comply with NFPA 921 testing, Plaintiffs need more than just the photographs they were able to take when they were permitted to view the exploded cylinder. If Defendants are unable to provide physical access to the one non-exploded cylinder (the "Passenger Cylinder"), then Plaintiffs asked Defendants at least to provide answers to several specific questions regarding

the passenger-side cylinder. Those basic questions included the identity of the party with current access to the cylinder, relevant weights for the cylinder, and any test results regarding propane in the cylinder. Plaintiffs also requested information regarding the identity of the party in possession of the one exploded cylinder, any information about testing done on that cylinder, and information regarding the supplier and installer of the valve assembly on the cylinder. Information related to propane testing on these cylinders as well as the parties who had access to cylinders is relevant to Plaintiffs' ability to establish the cause of the Incident.

63.     Second, regarding the Progressive Cylinders, Plaintiffs asked DOJ for basic information such as the identity of the party currently in possession of those cylinders, information related to the weights of the cylinders, results of efforts to determine the amount of propane in the cylinders, information regarding whether propane was ever purged from these cylinders, and results of any testing completed on the Progressive Cylinders.

64.     Third, Plaintiffs requested access to any video in the government's possession showing the area of or near the Incident on and before July 1, 2014. Plaintiffs have become aware of cameras at a nearby business, Grace World Trading, that could have filmed the relevant area on July 1, 2014. Plaintiffs are also aware of cameras placed at DR Auto, the business in front of which the food truck parked when the truck was open for business, and which filmed the location of the truck and its operations for multiple days and from at least three camera angles. Plaintiffs requested any copies of Grace World Trading or DR Auto videos relevant to the Incident and the operation of the food truck to the extent DOJ has any such videos in its possession.

65.     Providing access to prerecorded copies of videos already in the government's possession should not pose an undue burden on Defendants. Moreover, providing access to videos not recorded by the government would not require the disclosure of any of its own

internal deliberative information and thus should fall within the standards for disclosure under DOJ regulations. Plaintiffs cannot obtain these videos from any other source, and they have obvious relevance for Plaintiffs' ability to defend themselves in the State Litigation. Plaintiffs' only available means for acquiring access to any still-existent videos is through Defendants' provision of any such evidence that Defendants may hold in their possession.

66.     Fourth, regarding the food truck, Plaintiffs acknowledged the October 2017 release of the truck to the litigants to conduct expert inspections. To establish and confirm the integrity of those tests, Plaintiffs asked Defendants to provide information about who had access to the truck and any items removed from the truck prior to October 2017. Plaintiffs also requested that Defendants provide access to any receipts that Defendants may possess regarding the truck's operation or purchase of propane. Plaintiffs have also asked Defendants to provide the results of any previous tests performed on the truck or its appliances. Because Plaintiffs had no ability to access the truck prior to October 2017—over three years after the Incident—Plaintiffs need Defendants' assistance in acquiring this information.

67.     Plaintiffs have asked either for access to the relevant evidence and answers to their narrow questions, or simply confirmation from DOJ that no such information exists.

68.     After receiving no response from Defendants for nearly a month, Plaintiffs reiterated their requests in a follow-up letter on January 3, 2018, indicating they would deem a non-response by January 8, 2018 to be an agency denial of Plaintiffs' requests. DOJ responded that it was referring Plaintiffs' request to DOT and emphasized that it had not made a final agency decision on Plaintiffs' December 8, 2017 requests. Defendants, however, have provided no substantive information responding to Plaintiffs' December 8, 2017 requests. Plaintiffs have an urgent, time-sensitive need for this information because of February and April 2018 expert disclosure deadlines and a June 2018 trial date in the State Litigation.

## V. CLAIMS

**First Cause of Action**
**For Declaratory and Injunctive Relief**
**Under the Administrative Procedure Act, 5 U.S.C. §§ 500 *et seq.*,**
**and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202**

69.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

70.     The APA requires federal agencies to engage in reasoned decisionmaking, and an agency's decreed result must not only be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational.

71.     The evidence and information Plaintiffs seek pertain directly to the State Litigation. Plaintiffs cannot obtain this evidence and information from any other source, and Plaintiffs' requests are narrowly tailored to encompass only such information that is essential to Plaintiffs' representation of their interests in State Litigation.

72.     Providing access to physical evidence and allowing a limited number of depositions would not impose a substantial burden on the government. Moreover, the requested evidence and information is not privileged or confidential, does not intrude upon the privacy interests of third parties, and is not cumulative.

73.     Defendants' refusals of Plaintiffs' *Touhy* requests are arbitrary and capricious because they are unsupported by any rationales recognized by DOJ's and DOT's *Touhy* regulations.

74.     Defendants' refusals of Plaintiffs' *Touhy* requests are also arbitrary and capricious because they fail to account for the importance and urgency of the material sought to Plaintiffs' ability to defend themselves in the State Litigation.

75.     Accordingly, Defendants' actions must be set aside under the APA because they are "arbitrary [and] capricious." 5 U.S.C. § 706(2)(A).

76.     Defendants' refusals to comply with Plaintiffs' *Touhy* requests constitute final agency action that adversely affects Plaintiffs.

77.     DOT's November 27, 2017 letters stated that it was denying Plaintiffs' requests for both physical evidence and depositions, and that each refusal was a "final agency decision."

78.     DOJ's October 30, 2017 letter stated that its denial of Plaintiffs' request for the deposition of Detective Brooks was a "final agency decision." In addition, DOJ's failure to respond to the requests in Plaintiffs' December 8, 2017 letter, followed by its referral of the letter to DOT one month later and its subsequent insistence that DOJ had not made a final agency decision on that request is also prejudicing Plaintiffs' rights in the State Litigation.

79.     Defendants' refusals to comply with Plaintiffs' *Touhy* requests for information directly relevant and essential to Plaintiffs' ability to defend themselves in significant state court legislation were arbitrary, capricious, and abuses of discretion in violation of the APA. The Court should hold unlawful and set aside Defendants' refusal to comply with Plaintiffs' *Touhy* requests under 5 U.S.C. § 706(2).

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

1.  Declare that Defendants' refusals to comply with Plaintiffs' *Touhy* requests exceed their statutory authority;

2.  Declare that Defendants' refusals to comply with Plaintiffs' *Touhy* requests are arbitrary, capricious, and abuses of discretion;

3.  Order Defendants to comply with Plaintiffs' *Touhy* requests by permitting access to and testing of physical evidence, producing any video or other tangible evidence in their possession, making the relevant agents and former agents available for depositions, and providing information about their investigation of the Incident sought by Plaintiffs;

4.  Award costs and reasonable attorneys' fees incurred in this action to the extent

permitted by law; and

5.  Grant such other and further relief that the Court deems just and proper.

Dated:  Washington, DC
January 10, 2018

CONSOVOY MCCARTHY PARK PLLC

By:    */s/ William S. Consovoy*
William S. Consovoy (D.C. Bar No. 493423)
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
tom@consovoymccarthy.com
(703) 243-9423

Michael H. Park (*pro hac vice* application forthcoming)
CONSOVOY MCCARTHY PARK PLLC
3 Columbus Circle, 15th Floor
New York, NY 10024
park@consovoymccarthy.com
(212) 247-8006

*Attorneys for Plaintiff U-Haul International, Inc.*

Philip D. Bartz (D.C. Bar No. 379603)
Adam L. Shaw (D.C. Bar No. 1035046)
BRYAN CAVE LLP
1155 F Street, N.W., Suite 700
Washington, D.C. 20004
philip.bartz@bryancave.com
adam.shaw@bryancave.com
(202) 508-6000

*Attorneys for Plaintiff U-Haul Co. of Pennsylvania*